REGINALD KEATON, III,

                Plaintiff,

v.                                        Case No. 23-cv-1657-pp

HARMONY DANIELSON,

                Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 5) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Reginald Keaton, III, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant was deliberately indifferent his risk of self-harm. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, and to appoint counsel, dkt. no. 5, and screens his complaint, dkt. no. 1.

I.    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On December 27, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $21.46. Dkt. No. 9. The court received that fee on February 13, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names correctional officer Harmony Danielson as the only defendant. Dkt. No. 1 at 2. The plaintiff alleges that on January 3, 2021, he asked the incarcerated person next to him to ask the defendant "to pass [him] the phone so that [he] could check on [his] family." Id. at 2, ¶2. The plaintiff says the defendant threw the phone at the floor, intentionally breaking it and preventing him from using it. Id. at ¶3. The plaintiff says he "became Very Upset [and] Angry and began to have 'SnowBalling' thoughts of negativity that

3
Case 2:23-cv-01657-PP   Filed 03/26/24   Page 3 of 13   Document 15

triggered an Anxiety Attack." Id. at ¶4. He says this led to "thoughts [and] feelings of suicide, which [he] LOUDLY VOICED to the defendant" by saying "I'M SUICIDAL C/O!!" Id. (all caps in original). The plaintiff says the defendant turned to look and him but told him, "I really don't give a f*ck dude!!!" Id. at ¶5 (all caps omitted). He says the defendant then turned to walk away "while [l]aughing loudly." Id. The plaintiff alleges that after the defendant walked away, he took fifty pills "in an attempt to take his life." Id. at 3, ¶6. The plaintiff later clarifies that these pills were Tylenol. Id. at ¶10. He says he "ended up in the hospital" and received treatment there for three days. Id. at ¶7.

The plaintiff asserts that the defendant failed to protect him from his suicide attempt and was deliberately indifferent to the risk that he would attempt to take his life despite him telling her that he was suicidal. Id. at ¶¶8–9. The plaintiff asserts that the defendant also was deliberately indifferent "to the DOC's Suicide Prevention Training." Id. at ¶9. He reiterates that he was hospitalized after his suicide attempt, and he alleges that he "Also suffered Further Mental Deterioration from this incident of attempted suicide." Id. at ¶¶10–11.

The plaintiff attached several documents in support of his claims, including his medical chart from his hospital stay and declarations from two other incarcerated persons who support his version of the events. Id. at ¶13; Dkt. Nos. 1-1, 3–4. The doctor who treated the plaintiff at the hospital noted that the plaintiff has a "history of depression anxiety PTSD bipolar disorder" and that his overdose was "probably reflux [sic] in nature rather than plan [sic]

4

suicidal attempt." Dkt. No. 1-1 at 13. The doctor wrote that the plaintiff was upset because "his mother is hospitalized and he wanted to talk to her and he was not getting permission to do that." Id. at 13–14.

The plaintiff seeks declaratory judgment that the defendant violated his rights and damages totaling $1 million. Dkt. No. 1 at 4.

C. Analysis

The court analyzes the plaintiff's allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from an incarcerated person's act or threat of self-harm "up to and including suicide." Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018). The subjective component requires the plaintiff to demonstrate that the prison official acted with the requisite intent, that is, that she had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. The plaintiff must show the official's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

The plaintiff alleges that when he asked to use the phone in his prison, the defendant intentionally threw the floor to the ground, breaking it. His medical notes show that he wanted to call his mother, who was hospitalized at

5

the time. The plaintiff became very upset and told the defendant that he felt suicidal. Despite that threat, the defendant told the plaintiff that she did not care and walked away. She allegedly did not take any action in response to the plaintiff's threat. The plaintiff then swallowed fifty pills of Tylenol, for which he was hospitalized for three days. These allegations suggest that the defendant had "actual, personal knowledge of a serious risk" that the plaintiff would attempt suicide and failed to take "any reasonable response to it." That is sufficient to state a claim under the Eighth Amendment.

The notes from the plaintiff's hospital stay suggest that his pill overdose was a reflexive response to the defendant's comments rather than a planned attempt at taking his life. It is possible that the plaintiff's threat was insincere, and the defendant cannot be held liable for not immediately responding to it as a legitimate suicide attempt. See Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020). But at screening, the court must liberally construe the complaint and accept the plaintiff's allegations as true. With that in mind, the court finds that the plaintiff sufficiently states an Eighth Amendment claim that the defendant was deliberately indifferent to his suicide threat. The court will allow him to proceed on that claim.

Perhaps the plaintiff also wishes to proceed on a claim that the defendant violated his rights when she told him that she "really [did not] give a f*ck" and laughed at him. To the extent that the plaintiff seeks to proceed on such a claim, the court will not allow him to do so. Except in exceptional circumstances, verbal abuse or unprofessional comments from prison officials

6

does not constitute a violation of the Eight Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015); and DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000), abrogated in part on different grounds by Savory v. Cannon, 947 F.3d 409, 423–24 (7th Cir. 2020) (en banc)) (explaining that prison staff's use of even "[r]epugnant words . . . will seldom rise to an Eighth Amendment violation" because "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners"). While the defendant's comments may have been unprofessional, they were not unconstitutional.

The plaintiff also asserts that the defendant failed to adhere to the DOC's Suicide Prevention Training. But §1983 protects against only constitutional violations, not violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). The plaintiff may not proceed on a claim that the defendant violated her training by disregarding his suicidal comments.

Finally, the plaintiff seeks declaratory relief and damages. But declaratory relief "is only proper if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The plaintiff is suing based on a single, isolated incident and does not allege that there is any ongoing violation of his rights. That means declaratory relief is not available. He may proceed only on his request for damages.

### III. Motion to Appoint Counsel (Dkt. No. 5)

The plaintiff asks the court to appoint him a lawyer because he is unable to afford counsel, his issues are complex, this is his first time litigating and he has limited knowledge of the law. Dkt. No. 5. He also says that he is mentally ill and is often placed on clinical observation status, "which may possibly interfere with litigation deadlines." Id. The plaintiff alleges that "over 30 days ago" he wrote to three different attorneys, but none accepted his case. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be

8

Case 2:23-cv-01657-PP   Filed 03/26/24   Page 8 of 13   Document 15

determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff says he contacted three attorneys, but none agreed to take his case. He did not attach any letters he sent to those attorneys or any

responses he received, if any. The court nonetheless finds that the plaintiff's attempts to obtain counsel satisfy the first element discussed above.

But the plaintiff has not satisfied the second element. The plaintiff says he cannot afford counsel on his own, his issues are complex and he has limited legal knowledge. Those things may be true, but they are not unique to the plaintiff or to incarcerated litigants generally. As the court explained above, likely all incarcerated litigants would benefit from having counsel's assistance. But volunteer counsel is very limited, so the court must use its discretion to recruit an attorney only for those most in need of assistance. See Lockridge v. Larson, No. 23-2423, 2024 WL 774370, at *3 (7th Cir. Feb. 26, 2024) (citing Mejia v. Pfister, 988 F.3d 415, 420 (7th Cir. 2021)). The plaintiff does not explain why or how he falls into that category.

Contrary to the plaintiff's statement, this is not a complicated case. The plaintiff says that a correctional officer disregarded his stated intent to harm himself, and that he carried out that threat. He provided statements from two other incarcerated persons who say they witnessed some or all these events. This case likely will come down to the officer's word against the plaintiff's and that of his witnesses. Given that simple issue, it is unlikely that the plaintiff will need counsel to present his case adequately. The plaintiff has explained that sometimes he is placed into clinical observation status because of mental health issues. If/when that happens, the plaintiff can ask the court to give him more time if he has a pending deadline.

The plaintiff's complaint shows he has a firm grasp of the events alleged and an understanding of his constitutional claim against the defendant. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If that happens, and if giving the plaintiff additional time does not help, it may be appropriate for the court to recruit counsel to represent the plaintiff. At this early stage of the case, however, it is impossible to tell whether the plaintiff requires the assistance of counsel to present it. The court will deny without prejudice the plaintiff's motion to appoint counsel. That means he may renew his request later if he still believes he needs counsel's assistance to litigate this case adequately.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 5.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Harmony Danielson. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$328.54** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 26th day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
